**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-61730-ELFENBEIN

**NEO-DAVIS**,

  Plaintiff,

v.

**MARINA GARCIA-WOODS**, *et al*,

  Defendants.

_____/

## ORDER TO AMEND

**THIS CAUSE** is before the Court on *pro se* Plaintiff Neo-Davis's Complaint ("Complaint"), ECF No. [1], and his Motion for Leave to Proceed *in forma pauperis* ("IFP Motion"), ECF No. [3]. After reviewing the pleadings, record, and relevant law, the IFP Motion, **ECF No. [3]**, is **GRANTED.** Based upon the Court's review of the Complaint, Plaintiff **SHALL** amend the Complaint, **ECF No. [1]**, consistent with this Order pursuant to § 1915(e)(2)(ii).

## I. BACKGROUND

The Complaint, styled as a "Verified Bill in Equity / Notice of Harm," names seventeen respondents, including various Broward County circuit and appellate judges, a retired United States Magistrate Judge, the Broward County Sheriff, the Broward County Clerk of Courts, and various private mortgage servicers, title companies, and individuals. *See* ECF No. [1] at 1–4. The Complaint does not invoke any provision of the United States Constitution, any federal statute, or any other recognized basis for this Court's jurisdiction. *See generally id*. Instead, it purports to invoke "Divine Equity," asserts that it "stands outside any statutory jurisdiction," and states that "[n]o corporate, statutory, or commercial jurisdiction applies." *See* ECF No. [1] at 1, 5. The

Complaint further purports to list "Trust Property & CUSIPs" linking the names of private individuals to mutual fund CUSIP numbers, and recites generalized accusations against each respondent — such as "wrongful foreclosure," "administrative obstruction," and "trespass upon trust res" — without identifying any federal legal theory, any specific statutory provision, or any factual basis sufficient to support a cognizable claim. *See* ECF No. [1] at 2–4. Against this backdrop, Plaintiff requests permission to prosecute his claims in this lawsuit without prepaying the Court's filing fee and requests permission to instead proceed IFP. *See* ECF No. [3].

## II.   LEGAL STANDARDS

### A.  Motion to Proceed *In Forma Pauperis*

In most situations,[1] a plaintiff who initiates a civil action in this District must pay a filing fee of $405. *See* 28 U.S.C. § 1914(a); *Flannery v. USAA Gen. Indem. Co.*, No. 24-CV-14390, 2024 WL 5485793, at *1 (S.D. Fla. Dec. 23, 2024); Court Fees, U.S. Dist. Ct. for S.D. Fla., https://www.flsd.uscourts.gov/court-fees (last visited March 18, 2026). A plaintiff can avoid paying the filing fee by including along with the complaint a motion to proceed *in forma pauperis* ("IFP"). *See, e.g.*, 28 U.S.C. § 1915; *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004). A plaintiff moving to proceed IFP must submit "an affidavit that includes a statement of all assets" the plaintiff possesses, a statement "that the person is unable to pay" the filing fees, "the nature of the action," and the "affiant's belief that" he or she "is entitled to redress." *See* 28 U.S.C. § 1915(a)(1).[2]

---

[1] For an application for a writ of habeas corpus, the filing fee is $5. *See* 28 U.S.C. § 1914(a).

[2] Though the plain language of § 1915 appears to make its provision applicable only to prisoners, "the affidavit requirement applies to all persons requesting leave to proceed IFP." *Martinez*, 364 F.3d at 1306; *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("Reasonable access to the courts is provided to indigent claimants by the in forma pauperis (IFP) statute, 28 U.S.C. sec. 1915 *et seq.*, which allows commencement of suits without payment of fees and court costs by a person who makes an affidavit that he is unable to pay the costs.").

If a plaintiff files a motion to proceed IFP and submits the required affidavit, the court must first determine whether "the statements in the affidavit satisfy the requirement of poverty" such that the "affidavit is sufficient on its face to demonstrate economic eligibility." *See Martinez*, 364 F.3d at 1307 (quotation marks omitted). An "affidavit addressing the statutory language should be accepted by the court, absent a serious misrepresentation, and need not show that the litigant is absolutely destitute to qualify for indigent status under § 1915." *Id.* (quotation marks omitted). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* (footnote omitted).

If the affidavit is facially sufficient, the court should "docket the case and then proceed to the question of whether the asserted claim is frivolous." *Id.* (alteration adopted, quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2)(i) (instructing that a court must dismiss the case if the court "at any time . . . determines that . . . the action or appeal . . . is frivolous or malicious,"). A claim is frivolous if it "realistically has no better than a slight chance of success" or "lacks an arguable basis" in law or "in fact, for example, [by] asserting fantastic facts." *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.1 (11th Cir. 1990). Section 1915(e) also requires the court to dismiss a complaint that "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(ii). To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Those substance requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to both "state a claim to relief that is plausible on its face" and "give the

defendant fair notice of what the claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration adopted, quotation marks omitted). Finally, § 1915(e) requires the court to dismiss a complaint that "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(iii).

And, of course, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). "Still, once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon*, 863 F.2d at 837. And while "*pro se* pleadings are liberally construed and federal courts should look beyond the label of the pleadings to determine whether they are properly characterized, a court may not serve as *de facto* counsel for a party or rewrite a pleading." *United States v. Cordero*, 7 F.4th 1058, 1068 (11th Cir. 2021) (citations and quotation marks omitted).

### B. Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(h), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Eleventh Circuit has stated that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings" and that "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *See Univ. of S. Ala.*, 168 F.3d at 410. The United States Supreme Court has long held that the *Rooker–Feldman* doctrine bars federal district courts from reviewing "cases brought by state-court losers complaining of injuries caused by state-court judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005). Federal district courts may not review or annul final state-court judgments; such review lies exclusively with the respective state court's appellate procedures and the United States Supreme Court. *See id*. When this doctrine

applies, the federal case must be dismissed for lack of subject-matter jurisdiction. *See id.*

In the Eleventh Circuit, courts routinely apply this narrow but firm bar. "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)). "A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or [if] it 'succeeds only to the extent that the state court wrongly decided the issues.'" *May v. Morgan Cty. Ga.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). Stated differently, "[a] claim that at its heart challenges the state court decision itself — and not the statute or law which underlies that decision — falls within the doctrine because it 'complain[s] of injuries caused by state-court judgments' and 'invite[s] . . . review and rejection of those judgments.'" *Id.* (quoting *Exxon*, 544 U.S. at 284).

Unpublished Eleventh Circuit decisions and courts in this District have also applied this bar in the mortgage-foreclosure context. Courts generally hold that claims that would "effectively nullify" a state foreclosure judgment or succeed only if the state court "wrongly decided," the issues are inextricably intertwined and jurisdictionally barred, even when framed under federal statutes. *See Bedasee v. Fremont Inv. & Loan Co.,* 741 F. App'x 642, 644 (11th Cir. 2018); *Symonette v. Aurora Loan Servs., LLC*, 631 F. App'x 776, 778 (11th Cir. 2015); *Smith v. 21st Mortgage Corp.*, No. 18-CV-61133, 2019 WL 13237036, at *6 (S.D. Fla. Mar. 7, 2019), *report and recommendation adopted*, No. 18-CV-61133, 2019 WL 13237035 (S.D. Fla. Mar. 26, 2019).

### C. Pleading Requirements

Section 1915(e)(2) requires the Court to dismiss Plaintiff's case if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Failure to state a claim includes failure to comply with the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. Every complaint, whether filed by a *pro se* party or an attorney, must comply with the Federal Rules of Civil Procedure. *See id*. That means Plaintiff's Complaint must conform with Rule 8, which requires him to give a short and plain statement of his claims showing he is entitled to relief, *see* Fed. R. Civ. P. 8(a), and with Rule 10, which requires him to state those claims in a series of numbered paragraphs and to limit each paragraph to a single set of circumstances, *see* Fed. R. Civ. P. 10(b).

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Those substance requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). There are four types of shotgun pleadings that violate Rule 8(a), Rule

6

10(b), or both:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnote call numbers omitted).  The "unifying characteristic" of shotgun pleadings is they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* at 1323 (footnote call number omitted).  The Eleventh Circuit has "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are

altogether unacceptable."). It has made clear that a district court that receives a shotgun pleading, at a minimum, "must intervene *sua sponte* and order a repleader." *See Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And if the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *see Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *see Jackson*, 898 F.3d at 1357. With that said, courts must still be mindful to "construe *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (citation omitted).

## III. DISCUSSION

As explained above, evaluating a non-prisoner complaint when the plaintiff has filed a motion to proceed IFP instead of paying the filing fee is a two-step process. First, the Court must determine whether the statements in the IFP affidavit facially satisfy the requirement of poverty and demonstrate economic eligibility. *See Martinez*, 364 F.3d at 1307. Second, for those plaintiffs who satisfy the first step, the Court must screen the complaint to ensure that it is not frivolous or malicious, does not fail to state a claim, and does not seek monetary relief against a defendant who is immune. *See* 28 U.S.C. § 1915(e)(2). If the complaint fails to satisfy any one of these prongs, it is subject to dismissal. *Id.*

Plaintiff has satisfied the first step here. Based on his IFP affidavit averring he is "unable to pay the costs of these proceedings" and the financial information contained within the affidavit, the Court finds that, because of his poverty, he is unable to pay for the court fees and costs. *See Martinez*, 364 F.3d at 1307. The Court starts its analysis by looking at the Department of Health

and Human Services ("HHS") poverty guidelines, as these are central to an assessment of an applicant's poverty. *See, e.g.*, id. at 1307 n.5 (comparing IFP applicant's affidavit to the HHS guidelines to determine he was above the poverty line and not absolutely destitute); *Sanchez v. Nordstrom, Inc.*, No. 20-CV-20017, 2020 WL 13401700, at *1 (S.D. Fla. Jan. 3, 2020); Annual Update of the HHS Poverty Guidelines, 91 Fed. Reg. 1797, 1797-1798 (Jan. 15, 2026). The § 1915 analysis also requires the Court to compare "the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement." *Thomas v. Chattahoochee Jud. Cir.*, 574 F. App'x 916, 917 (11th Cir. 2014).

In the IFP motion, Plaintiff avers that he has no dependents. *See* ECF No. [3] at 3. Thus, the Court must consider the poverty table as it relates to a single-person household. According to the 2025 HHS poverty table, a one-person household meets the poverty threshold with an annual income of $15,960 or less. *See* 91 Fed. Reg. at 1798. Here, Plaintiff states that he is unemployed and has no income, that he does not anticipate earning any money, and that he does not anticipate a change in income for the next 12 months. *See* ECF No. [3] at 1, 5. Plaintiff's income is well below the poverty threshold. Accordingly, the IFP Motion, **ECF No. [3]**, is **GRANTED**.

Moving to the second step, the Court must decide if the Complaint is "frivolous or malicious;" "fails to state a claim on which relief may be granted;" or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2). Because the Complaint fails to state a claim for relief, the Court need not analyze the other prongs, as the Complaint requires amendment on this basis alone.

Even liberally construed, the Complaint fails to satisfy any of the requirements of Rule 8(a). Most fundamentally, the Complaint does not plead any basis for this Court's subject-matter jurisdiction. *See* ECF No. [1] at 1; Fed. R. Civ. P. 8(a)(1). The Complaint explicitly disclaims

any statutory or constitutional basis for jurisdiction, invoking instead "Divine Equity" and asserting that "[n]o corporate, statutory, or commercial jurisdiction applies." *See* ECF No. [1] at 1. Federal district courts are courts of limited jurisdiction and may exercise subject-matter jurisdiction only where it is conferred by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Self-styled invocations of "divine," "common law," or "equity" jurisdiction untethered to any recognized statutory or constitutional grant do not confer subject-matter jurisdiction upon this Court. Because the Complaint fails to identify any statutory or constitutional basis for the Court's jurisdiction, it does not satisfy even the first requirement of Rule 8(a). *See* Fed. R. Civ. P. 8(a)(1); *see generally* ECF No. [1]; Fed. R. Civ. P. 8(a)(2).

Moreover, to the extent the Complaint can be read as challenging the validity of state court foreclosure proceedings and orders — which it plainly does, accusing named Broward County judges of issuing unlawful foreclosure orders and "dismissing trust filings without acknowledging jurisdiction or remedy" — the *Rooker–Feldman* doctrine presents an independent bar to this Court's subject-matter jurisdiction. *See Exxon Mobil*, 544 U.S. at 281 (explaining that *Rooker-Feldman* doctrine bars federal review of "cases brought by state-court losers complaining of injuries caused by state-court judgments"). Plaintiff's claims are seemingly inextricably intertwined with the state court judgments he challenges because they would succeed only if this Court concluded that those judgments were wrongly decided. *See May*, 878 F.3d at 1005; *see also Bedasee*, 741 F. App'x at 644 (applying *Rooker–Feldman* in mortgage foreclosure context). Plaintiff must address this jurisdictional impediment in any amended complaint.

The Complaint also fails to include a short and plain statement of any claim showing that Plaintiff is entitled to relief. *See generally* ECF No. [1]; Fed. R. Civ. P. 8(a)(2). Indeed, it is a

classic shotgun pleading: it names seventeen Defendants and lists generalized accusations against each without distinguishing which facts support which legal theory against which respondent. *See Weiland*, 792 F.3d at 1323 (describing shotgun pleading categories, including complaints that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"). Beyond the failure to plead jurisdiction, the Complaint fails to allege any federal statutory or constitutional right that was violated, fails to allege any specific act or omission by any individual respondent that would support a cognizable federal cause of action, and makes no demand for any specific, legally cognizable form of relief. Thus, the Complaint does not comply with Rules 8(a)(1), 8(a)(2), or 8(a)(3) of the Federal Rules of Civil Procedure.

Every complaint, whether filed by a *pro se* party or an attorney, must comply with the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. Because the Complaint fails to comply with Rule 8 even under a broad reading, *see* Fed. R. Civ. P. 8(a)(2), and because the Court cannot rewrite the Complaint to save it, *see Cordero*, 7 F.4th at 1068 n.11, Plaintiff must amend the Complaint to state a claim for relief.

## IV.     CONCLUSION

For the above reasons, Plaintiff's Motion for Leave to Proceed *in forma pauperis*, **ECF No. [3]**, is **GRANTED**. Plaintiff shall file an Amended Complaint, addressing the deficiencies identified herein, **no later than April 1, 2026**. Failure to timely file an Amended Complaint addressing the deficiencies in the original Complaint may result in a dismissal of Plaintiff's claims.

CASE NO. 25-CV-61730-ELFENBEIN

**DONE AND ORDERED** in Chambers in Miami, Florida on March 17, 2026.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:

**Neo-Davis**
15031 North Saxon Circle
Southwest Ranches, FL 33331
PRO SE